**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| XIROS, LTD., | |
| Plaintiff | |
| v. | Civil Action No. 6:21-cv- 00681 |
| DEPUY SYNTHES, INC., JOHNSON & JOHNSON, DEPUY ORTHOPAEDICS, INC., MEDICAL DEVICE BUSINESS SERVICES, INC., DEPUY SYNTHES SALES, INC., WACO ORTHOPEDICS, ASCENSION MEDICAL GROUP PROVIDENCE ORTHOPEDIC AND SPORTS MEDICINE, JACOB BATTLE, M.D., AND CHAD S. CONNER, M.D., | **PATENT CASE** **JURY TRIAL DEMANDED** |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement in which plaintiff Xiros, Ltd. ("Xiros"), makes the following allegations against defendants DePuy Synthes, Inc. ("DePuy"), Johnson & Johnson ("J&J"), DePuy Orthopaedics, Inc. ("DOI"), Medical Device Business Services, Inc. ("MDBS"), DePuy Synthes Sales, Inc. ("DSS"), Waco Orthopedics, Ascension Medical Group Providence Orthopedic and Sports Medicine, Jacob Battle, M.D., and Chad S. Conner, M.D. (collectively, "Defendants").

**BACKGROUND**

1.     This is case to protect the pioneering inventions of Dr. Bahaa Seedhom, a renowned researcher in the area of joint mechanics, prosthetics and soft tissue repair.  Dr. Seedhom has been a professor and director of bioengineering research in the Musculoskeletal Unit at Leeds Medical School, and has also served as the Chairman, Technical Director, and

Owner of Xiros, which he founded in 1984.

2.      Dr. Seedhom, while teaching at University of Leeds, worked with colleagues Derrick White and Kenneth Langat Chelule to develop a surgical tool that would improve the accuracy and safety of knee replacement surgeries.  This invention would allow surgeons to make accurate cuts to the tibia and femur during knee replacement surgery that would be patient-specific and therefore account for intra-patient differences.  This innovation also used materials and a structure that would not expose the patient to debris in the surgical site.

3.      In recognition of these groundbreaking inventions, the United States Patent and Trademark Office granted Leeds University U.S. Patent Nos. 9,125,674 (the "'674 Patent"), 9,265,511 (the "'511 Patent"), 10,835,265 (the "'265 Patent"), and 10,835,266 (the "'266 Patent") (collectively, the "Asserted Patents").

4.      Many medical device companies (i.e., DePuy Synthes, Materialise NV, Zimmer Biomet, Corin Group, and Smith & Nephew plc) expressed an interest in this groundbreaking technology.  Under the protections of a confidentiality agreement, Dr. Seedhom and DePuy discussed a collaboration agreement, and Dr. Seedhom disclosed the details of these inventions to DePuy.

5.      Originally, DePuy represented to Dr. Seedhom that it wanted to collaborate with him to develop these surgical tools, but DePuy then abandoned the discussions.  With Xiros's confidential information in hand, DePuy copied Dr. Seedhom's inventions and launched a competing product line: TruMatch Personalized Solutions Resection Guides and TruMatch Solutions Pin Guides ("the Accused Products").

6.      In 2013, Leeds University assigned the Asserted Patents to Xiros.

7.      Xiros attempted to continue discussions with DePuy about licensing of Xiros's

ACTIVE/110152768.10

technology.  DePuy refused despite knowing that it infringes the Asserted Patents.  Since

rejecting Xiros' efforts, DePuy and the other Defendants have willfully infringed and continue to

infringe on the Asserted Patents, necessitating the instant suit.

## THE PARTIES

8.      Plaintiff Xiros is organized and exists under the laws of the United Kingdom with

a principal place of business in the United Kingdom at Springfield House, Whitehouse Lane,

Leeds, LS19 7UE.

9.      On information and belief, DePuy is incorporated in the state of Delaware and has

a principal place of business at 325 Paramount Drive, Raynham, Massachusetts.

10.     DePuy is the last listed owner of the TruMatch trademark.  DePuy is a U.S.

subsidiary of J&J.  *See* Exhibit K.  On information and belief, DePuy sells and offers for sale

TruMatch products in this district.

11.     DePuy distributes and sells its products through directly employed sales

representatives and exclusive third-party sales organizations. *See DePuy Synthes Sales, Inc. v.

Bunn*, C.A. No. 1:13-cv-00893 (W.D. Tex.), Dkt. 1 at ¶ 9.  According to DePuy, the sales

process for these products is highly technical, and it is vital to the sales performance of DePuy

that its sales representatives develop and maintain a relationship of trust with surgeon customers.

DePuy Sales Consultants are expected to inform surgeons on the safe and effective use of

DePuy's products.  Their relationships with physician customers and other related staff are

among the key factors necessary to grow and maintain DePuy's business and market share.  *See

DePuy Synthes Sales, Inc. v. Gore*, C.A. No. 5:19-cv-01189 (W.D. Tex.), Dkt. 1 at ¶ 13.  DePuy

sales representatives leverage the reputation, quality, and performance of DePuy products to

strengthen DePuy's relationships with surgeon customers.  *DePuy v. Bunn*, Dkt. 1 at ¶ 12. In

other words, DePuy has represented to the Court that their sales consultants are the first line of

ACTIVE/110152768.10

interaction with surgeons and hospital staff, serve as the embodiment of DePuy's business presence, and have a direct impact on the sales and market share of DePuy's products.

12.     DePuy has sales representatives that are responsible for geographic areas in the district including hospitals in Austin, Waco, and San Antonio.  *DePuy v. Bunn*, Dkt. 1 at ¶¶ 18-19; *DePuy v. Gore,* Dkt. 1 at ¶ 17.  In 2018, DePuy's annual revenue from sales encompassing San Antonio, Texas exceeded $2.4 million.  *DePuy v. Gore,* Dkt. 1 at ¶ 17.

13.     J&J is the corporate parent of DePuy.  On information and belief, J&J is incorporated in the state of New Jersey, and has a shares its principal place of business with DePuy at 325 Paramount Drive, Raynham, Massachusetts.  J&J advertises DePuy's TruMatch products on its website at https://www.jnjmedicaldevices.com/en-US/velys/knee/product/trumatch-personalized-solutions.

14.     DOI is a subsidiary of J&J that specializes in joint replacement surgical tools.  On information and belief, DOI is incorporated in the state of Indiana, and has a principal place of business at 700 Orthopaedic Dr., Warsaw, Indiana.

15.     MDBS is a subsidiary of J&J that specializes in joint replacement surgical tools.  On information and belief, MDBS is incorporated in the state of Indiana, and has a principal place of business at 700 Orthopaedic Dr., Warsaw, Indiana.

16.     DSS is a subsidiary of J&J.  On information and belief, DSS is incorporated in the state of Massachusetts, and has a shares its principal place of business with DePuy at 325 Paramount Drive, Raynham, Massachusetts.

17.     The above defendants are all part of a family of companies owned by DePuy and created to commercialize the TruMatch products in concert.  DePuy has described these entities as "a group of functionally-integrated companies with shared management and administrative

functions," and at least DePuy and DOI each have "a direct and substantial interest with respect to the customer relationships, goodwill, confidential information, and specialized training of the DePuy's franchise." *DePuy Synthes Sales, Inc. v. Orthofix Int'l N.V.*, C.A. No. 4:19-cv-00122 (E.D. Tex.), Dkt. 1 at ¶ 7.

18.     This web of interrelated companies operate within this district.  For example, DePuy maintains an office located at 10112 Huebner Rd, San Antonio, TX 78240.

19.     Dr. Jacob Battle, M.D. is an orthopedic surgeon that performs knee surgeries in Waco, TX.  Dr. Battle works at Waco Orthopedics, which has a regular and established place of business at 6600 Fish Pond Road, Suite 201, Waco, Texas.

20.     Dr. Chad S. Conner, M.D. is an orthopedic surgeon that performs knee surgeries in Waco, TX.  Dr. Conner works at Ascension Medical Group, Providence Orthopedic and Sports Medicine, which has a regular and established place of business at 7125 New Sanger Rd., Suite 516, Waco, Texas.

## JURISDICTION AND VENUE

21.     This action arises under the patent laws of the United States, Title 35 of  the United States Code, including in particular 35 U.S.C. § 271.

22.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

23.     This Court has personal jurisdiction over DePuy because DePuy has minimum contacts with Texas and this district such that this venue is a fair and reasonable one.  DePuy conducts substantial business in this forum, including (i) engaging in the infringing conduct alleged herein and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to companies and individuals in Texas and in this district.

24.     Venue in the Western District of Texas is proper under 28 U.S.C. §§ 1391(b) and

(c), and 1400(b).

25.     As described in above, on information and belief, DePuy has committed infringing acts in this judicial district by making, using, offering for sale, selling, or importing products or services that infringethe Asserted Patents, or by inducing others to infringe the Asserted Patents.

26.     On information and belief, DePuy has a regular and established physical presence in this district, including but not limited to, ownership of or control over property, equipment, or inventory.  On information and belief, DePuy has an office located at 10112 Huebner Rd, San Antonio, TX 78240.

27.     J&J, which is the corporate parent to DePuy, DOI, MDBS, and DSS, advertises TruMatch products on its company website, and recommends certain hospitals and doctors in this district that use the TruMatch products to directly infringe on the Asserted Patents.  On information and belief, J&J also has regular and established places of business in this district, including its offices at 1122 Colorado St # 208, Austin, Texas.

28.     In 2016, DePuy acquired Biomedical Enterprises, Inc. ("BME"), another company related to J&J, which is incorporated in Texas.  According to the Texas Secretary of State records, BME has an active registration with a mailing address at 14875 Omicron Dr. Ste. 205, San Antonio, Texas 78245.

29.     DePuy lists BME branded implants as DePuy products on its website's product catalogues.  BME displays a DePuy Synthes sign in front of its San Antonio office at 14875 Omicron Dr. Ste. 205, San Antonio, Texas 78245.  This location is yet another regular and established physical presence in this judicial district.

ACTIVE/110152768.10



30.     Waco Orthopedics and Ascension Medical Group Providence Orthopedic and Sports Medicine are hospitals that offer knee replacement surgeries in Waco, TX.  Jacob Battle, M.D. and Chad S. Conner, M.D. are orthopedic surgeons that perform knee replacement surgeries in Waco, TX.  On information and belief, Waco Orthopedics, Ascension Medical Group Providence Orthopedic and Sports Medicine, Jacob Battle, M.D., and Chad S. Conner, M.D., all use, sell, and/or advertise TruMatch products for knee replacement surgeries.  *See* Ex. L.  Thus, each of the above defendants are directly infringing on the Asserted Patents in this judicial district.

## THE ASSERTED PATENTS

31.     The Asserted Patents were developed by Derrick White, Bahaa Seedhom, and Kenneth Langat Chelule, at Leeds University and assigned to Xiros in 2013.  Xiros is the rightful owner by assignment of intellectual property relating to patient-specific surgical templates, including the Asserted Patents.

32.     Patent authorities worldwide have recognized that Xiros's patient-specific surgical templates are worthy of patent protection and have granted Xiros many patents on this

technology.  The United States Patent and Trademark Office ("USPTO") recognized these revolutionary innovations, in granting the Asserted Patents to Xiros.

33.     On September 8, 2015, the U.S. Patent and Trademark Office duly and legally issued the '674 Patent, titled "Surgical templates," to Derrick White, Bahaa Seedhom, and Kenneth Langat Chelule.  Xiros is the owner by assignment of all right, title, and interest in and to the '674 Patent, attached hereto as Exhibit A.

34.     On March 23, 2016, the U.S. Patent and Trademark Office duly and legally issued the '511 Patent, titled "Surgical templates," to Derrick White, Bahaa Seedhom, and Kenneth Langat Chelule.  Xiros is the owner by assignment of all right, title, and interest in and to the '511 Patent, attached hereto as Exhibit B.

35.     On November 17, 2020, the U.S. Patent and Trademark Office duly and legally issued the '265 Patent, titled "Surgical templates," to Derrick White, Bahaa Seedhom, and Kenneth Langat Chelule.  Xiros is the owner by assignment of all right, title, and interest in and to the '265 Patent, attached hereto as Exhibit C.

36.     On November 17, 2020, the U.S. Patent and Trademark Office duly and legally issued the '266 Patent, titled "Surgical templates," to Derrick White, Bahaa Seedhom, and Kenneth Langat Chelule.  Xiros is the owner by assignment of all right, title, and interest in and to the '266 Patent, attached hereto as Exhibit D.

**FACTUAL BACKGROUND AND DEFENDANTS' INFRINGEMENT**

37.     DePuy manufactures and sells patient-specific surgical systems, known as TruMatch surgical templates, to guide surgical drills and saws during knee replacement surgeries.  DePuy manufactures and sells two versions of the TruMatch system: TruMatch Personalized Solutions Resection Guides and TruMatch Solutions Pin Guides (collectively, the "Accused Products").  DePuy is the last listed owner of the TruMatch trademark.

38.     Defendants have infringed, and continue to infringe, the Asserted Patents by making, using, providing, offering to sell, importing, and selling (directly or through intermediaries) the Accused Products in this district and elsewhere in the United States, and by contributing to the infringement of, or inducing others to infringe the Asserted Patents.

39.     DePuy has been aware of Xiros' innovations, patents, and patent applications for over a decade and expressed great interest in Xiros' technology.

40.     DePuy's interest in this work began in January 2007.  Specifically, on or around January 9, 2007, the University of Leeds ("Leeds") and DePuy entered into a confidentiality agreement to discuss development of customized cutting guides for knee replacements developed by Dr. Bahaa Seedhom at Leeds.

41.     On or around March 23, 2007, Leeds filed British Patent Application No. GB0705613.8 (the "'663 Application") and sent a copy of the application and disclosures to Alan Ashby, who was the Vice President of Global Concept Development for DePuy International.

42.     Between June and August 2007, Leeds tried to negotiate a licensing agreement for the technology disclosed in the '663 Application.  However, DePuy never made a sincere offer to obtain a license, and refused to license the '663 Application, claiming that Leeds would face "significant barriers" in obtaining a granted patent.

43.     Instead of properly licensing the technology, DePuy used the knowledge obtained under protection of the confidentiality agreement to create the competing TruMatch line of products.

44.     Indeed, J&J's own website[1] references a 2008 article titled "Accuracy of MRI vs.

---

[1] https://www.jnjmedicaldevices.com/en-US/velys/knee/product/trumatch-personalized-solutions

ACTIVE/110152768.10

CT imaging with particular reference to patient specific templates for total knee replacement surgery," which was published by the three named inventors of the Asserted Patents.



45.     Not only is this article cited on the website, J&J also cites to this same article in multiple press releases dated August 19, 2011, and February 15, 2012.  Exs. M, N.  Thus, defendants DePuy, J&J, DOI, MDBS, and DSS, were aware of the technology developed by White, Chelute, and Seedhom, and were further aware of, or willfully blind to the Asserted

ACTIVE/110152768.10

Patents.

46.     On or around April 2013, Leeds assigned patents and patent applications relating to the '663 Application to Xiros.

47.     On or around June 2014, Xiros and DePuy renewed communications regarding licensing of Xiros's patents.  Stephen Manich, Assistant Patent Counsel for J&J, suggested alternative dispute resolution.  The parties continued to negotiate until Xiros sent an email on September 4, 2014, to Mr. Manich and Nadine McFarren, the Director of Research and Development of TruMatch for DePuy.  Xiros received no timely response.

48.     On or around February 2, 2015, Mr. Manich responded to Xiros stating that DePuy was not interested in obtaining a license.

49.     On or around November 15, 2015, Xiros again attempted to reopen negotiations with Bruce Rosengard, the Chief Technical Officer of the J&J Surgical business.

50.     Between June and September of 2016, Xiros and Joseph Kuranda, the Senior Director of Business Development for DePuy Synthes renewed licensing negotiations and communications.  In these communications, Xiros disclosed various patents and patent applications, and specifically cited three granted U.S. Patents, including the '674 and '511 Patents.  Mr. Kuranda acknowledged receipt of these communications and acknowledge that DePuy was aware of the Xiros patents and claims.

51.     Despite its interest in Xiros' technology, its awareness of Xiros' patents, and its awareness of the infringement by DePuy of the Xiros patents, DePuy decided to continue selling its infringing products without authorization from Xiros.

**COUNT ONE**
**INFRINGEMENT OF U.S. PATENT NO. 9,125,674**

52.     Plaintiff repeats and incorporates by reference each preceding paragraph as  if

fully set forth herein and further states:

53.    Xiros is the owner by assignment of the '674 Patent and holds all substantial rights in that patent, including the sole and exclusive right to sue and recover for any and all infringement.

54.    Claim 1 of the '674 Patent recites:

> 1. A surgical template system for use in working on a bone, comprising:
>
> a tool guide block comprising at least one guide aperture for receiving and guiding a tool to work on a bone; and
>
> patient specific locating means comprising a plurality of locating members, each member having a respective bone-engaging surface adapted to conform to a respective portion of a predetermined surface of a specific bone of a patient,
>
> wherein the tool guide block is non-adjustably attached to the locating means such that the member bone-engaging surfaces are secured in fixed position with respect to each other, for engaging the different respective portions of said surface of the bone, the at least one guide aperture is secured in a fixed position with respect to the bone-engaging surfaces, and the bone-engaging surfaces of the locating members conform to said predetermined surface so as to enable the attached locating means and tool guide block to be seated in a defined position with respect to the specific bone, with each member bone-engaging surface in contact with its respective portion of the bone surface, and wherein the tool guide block is formed from a first material and the locating means is formed from a second, different material.

55.    Defendants have infringed the '674 Patent as detailed in Exhibit G.

56.    Defendants' TruMatch resection guides have tool guide blocks for guiding tools to work on a bone in the form of saw slot to cut the femur or tibia.

ACTIVE/110152768.10



**Step 4:** Distal femoral resection          **Step 4:** Tibial plateau resection

57.    The TruMatch pin guides require the attachment of drill guides to the pin guides. The drill guides are then used to insert pins or drill holes into the bone.

   

**Step 1:** Insert Drill Guides and twist clockwise to tighten

**Step 3:** Drill anterior and distal pin holes, remove Drill Pins and Pin Guide

**Step 1:** Insert Drill Guides and twist clockwise to tighten

**Step 4:** Placement of Anterior Pins. Use of HP Uprod and Rod Extension

58.    Defendants' TruMatch guides consist of a plastic body with locating members with bone engaging surfaces adapted to conform to a specific bone of a patient.  The metallic instrument guide slots and pin holes are non-adjustably attached by a snap-fit mechanism or over-molding.

59.    Defendants have directly infringed and continue to directly infringe one or more claims, including at least claim 1 of the '674 Patent in violation of 35 U.S.C. § 271(a) by, without authority, making, using, offering to sell, or selling in the United States or importing into the United States the Accused Products.

60.    In addition, Defendants have indirectly infringed and continue to indirectly

ACTIVE/110152768.10

infringe the '731 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by others, including OEMs, agent-subsidiaries, affiliates, partners, service providers, manufacturers, importers, resellers, customers, and/or end users, in this district and elsewhere in the United States, through the dissemination of the Accused Products and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products (including Exhibits E-F) with knowledge and the specific intent that its efforts will result in direct infringement of the '674 Patent.

61.     For example, Defendants took active steps to encourage end users to use the  Accused Products in the United States in a manner it knows will directly infringe each element of one or more claims, including at least claim 1 of the '674 Patent, including by selling the Accused Products and promoting and instructing on their use despite knowing of the patent and the fact that such acts will cause the user to use the chip in a manner that infringes the patent. Defendants continue to undertake the above-identified active steps and has neither modified the Accused Products nor provided instructions to end users to avoid infringing since receiving notice of the '674 Patent and how those steps induce infringement of that patent.

62.     In addition, Defendants have indirectly infringed and continue to indirectly infringe the '674 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States,or importing into the United States, the Accused Products with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing technology or aspects of the chips are not a staple article of commerce suitable for substantial non-infringing use.

63.     The infringing aspects of the Accused Products can be used only in a manner that

infringes the '674 Patent and thus have no substantial non-infringing uses.  The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

64.     Defendants have had awareness of the '674 Patent since at least September 2016. Defendants' infringement of the '674 Patent has been and continues to be willful and deliberate because Defendants have acted in at least an objectively reckless manner in view of the high likelihood that its acts constituted infringement of the '674 Patent, and with full knowledge of Xiros's rights in the '674 Patent.

65.     Defendants' acts of infringement have caused and continue to cause damage to Xiros, and Xiros is entitled to recover from Defendants the damages it has sustained as a result of those wrongful acts in an amount subject to proof at trial. Defendants' infringement of Xiros's rights under the '674 Patent will continue to damage Xiros, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## COUNT TWO
## INFRINGEMENT OF U.S. PATENT NO. 9,265,511

66.     Plaintiff repeats and incorporates by reference each preceding paragraph as  if fully set forth herein and further states:

67.     Xiros is the owner by assignment of the '511 Patent and holds all substantial rights in that patent, including the sole and exclusive right to sue and recover for any and all infringement.

68.     Claim 1 of the '511 Patent recites:

1. A surgical template system for use in working on a bone, comprising:

at least one tool guide block comprising at least one guide aperture for receiving and guiding a tool to work on a bone; and

a patient-specific component comprising a plurality of locating members, each member having a respective bone-engaging surface adapted to conform to a respective portion of a predetermined surface of a specific bone of a patient,

wherein the tool guide block is non-adjustably attached to the patient-specific component such that the member bone-engaging surfaces are secured in fixed position with respect to each other, for engaging the different respective portions of said surface of the bone, and the at least one guide aperture is secured in a fixed position with respect to the bone-engaging surfaces, with the bone-engaging surfaces of the locating member configured to conform to said predetermined surface so as to enable the attached patient-specific component and tool guide block to be seated in a defined position with respect to the specific bone, with each member bone-engaging surface in contact with its respective portion of the bone surface, and wherein the tool guide block is formed from a first material and the patient-specific component is formed from a second, different material;

wherein the patient-specific component comprises a bore and a pin adapted to extend through the bore and be drivable into a bone surface to assist in securing the patient-specific component to the patient's bone.

69.     Defendants have infringed the '511 Patent as detailed in Exhibit H.

70.     Defendants' TruMatch guides have tool guide apertures to work on a bone in the form of saw slot to cut the femur or tibia, or drill guides to insert pins or drill holes into the bone.


**Step 4:** Distal femoral resection


**Step 4:** Tibial plateau resection

   

**Step 1:** Insert Drill Guides and twist clockwise to tighten

**Step 3:** Drill anterior and distal pin holes, remove Drill Pins and Pin Guide

**Step 1:** Insert Drill Guides and twist clockwise to tighten

**Step 4:** Placement of Anterior Pins. Use of HP Uprod and Rod Extension

71.     Defendants' TruMatch guides consist of a plastic body with locating members with bone engaging surfaces adapted to conform to a specific bone of a patient.  The metallic instrument guide slots and pin holes are non-adjustably attached by a snap-fit mechanism or over-molding.

72.     Defendants have directly infringed and continues to directly infringe one or more claims, including at least claim 1, of the '511 Patent in violation of 35 U.S.C. § 271(a) by, without authority, making, using, offering to sell, or selling in the United States or importing into the United States the Accused Products.

73.     In addition, Defendants have indirectly infringed and continues to indirectly infringe the '731 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by others, including OEMs, agent-subsidiaries, affiliates, partners, service providers, manufacturers, importers, resellers, customers, and/or end users, in this district and elsewhere in the United States, through the dissemination of the Accused Products and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products (including Exhibits E-F) with knowledge and the specific intent that its efforts will result in direct infringement of the '511 Patent.

74.     For example, Defendants took active steps to encourage end users to use

ACTIVE/110152768.10

the  Accused Products in the United States in a manner it knows will directly infringe each element of one or more claims, including at least claim 1 of the '511 Patent, including by selling the Accused Products and promoting and instructing on their use despite knowing of the patent and the fact that such acts will cause the user to use the chip in a manner that infringes the patent. Defendants continue to undertake the above-identified active steps and has neither modified the Accused Products nor provided instructions to end users to avoid infringing since receiving notice of the '511 Patent and how those steps induce infringement of that patent.

75.     In addition, Defendants have indirectly infringed and continue to indirectly infringe the '511 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States,or importing into the United States, the Accused Products with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing technology or aspects of the chips are not a staple article of commerce suitable for substantial non-infringing use.

76.     The infringing aspects of the Accused Products can be used only in a manner that infringes the '511 Patent and thus have no substantial non-infringing uses.  The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

77.     Defendants have had awareness of the '511 Patent since at least September 2016. Defendants' infringement of the '511 Patent has been and continues to be willful and deliberate, because Defendants have acted in at least an objectively reckless manner in view of the high likelihood that its acts constituted infringement of the '511 Patent, and with full knowledge of Xiros's rights in the '511 Patent.

78.     Defendants' acts of infringement have caused and continue to cause damage to

Xiros, and Xiros is entitled to recover from Defendants the damages it has sustained as a result of those wrongful acts in an amount subject to proof at trial. Defendants' infringement of Xiros's rights under the '511 Patent will continue to damage Xiros, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

**COUNT THREE**
**INFRINGEMENT OF U.S. PATENT NO. 10,835,265**

79.     Plaintiff repeats and incorporates by reference each preceding paragraph as  if fully set forth herein and further states:

80.     Xiros is the owner by assignment of the '265 Patent and holds all substantial rights in that patent, including the sole and exclusive right to sue and recover for any and all infringement.

81.     Claim 1 of the '265 Patent recites:

1. A system comprising:

a metal saw guide that has a slot to receive and guide a saw;

a plastic body; and

a plurality of plastic locating members that extend from the plastic body,

wherein at least one plastic locating member of the plurality of plastic locating members is patient-specific,

wherein each plastic locating member has a respective bone-engaging surface that conforms to a corresponding surface of a femur,

wherein each plastic locating member has a bore extending through the plastic locating member,

wherein the metal saw guide is non-adjustably attached to the plastic body, and

wherein each plastic locating member conforms against the corresponding surface of the femur to place the metal saw guide in a fixed position relative to the femur.

ACTIVE/110152768.10

82.     Defendants have infringed the '265 Patent as detailed in Exhibit I.

83.     Defendants' TruMatch resection guides have a metal saw guide in the form of a saw slot to cut the femur or tibia.



**Saw slot is not adjustable and is attached to the plastic body and fixed relative to the femur**

**Locating member conforms against the surface of the femur**

Figure 5

84.     Defendants' TruMatch resection guides consist of a plastic body with locating members with bone engaging surfaces adapted to conform to a the surface of the femur in order to correctly position the metal saw guide.  As shown in the figure above, each plastic locating member has a bore extending through it.  The metallic instrument guide slots and pin holes are non-adjustably attached by a snap-fit mechanism or over-molding.

85.     Defendants have directly infringed and continue to directly infringe one or more claims, including at least claim 1, of the '265 Patent in violation of 35 U.S.C. § 271(a) by, without authority, making, using, offering to sell, or selling in the United States or importing into the United States the Accused Products.

86.     In addition, Defendants have indirectly infringed and continue to indirectly infringe the '731 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage

ACTIVE/110152768.10

and facilitate direct infringement by others, including OEMs, agent-subsidiaries, affiliates, partners, service providers, manufacturers, importers, resellers, customers, and/or end users, in this district and elsewhere in the United States, through the dissemination of the Accused Products and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products (including Exhibits E-F) with knowledge and the specific intent that its efforts will result in direct infringement of the '265 Patent.

87.    For example, Defendants took active steps to encourage end users to use the  Accused Products in the United States in a manner it knows will directly infringe each element of one or more claims, including at least claim 1 of the '265 Patent, including by selling the Accused Products and promoting and instructing on their use despite knowing of the patent and the fact that such acts will cause the user to use the chip in a manner that infringes the patent. Defendants continue to undertake the above-identified active steps and has neither modified the Accused Products nor provided instructions to end users to avoid infringing since receiving notice of the '265 Patent and how those steps induce infringement of that patent.

88.    In addition, Defendants have indirectly infringed and continue to indirectly infringe the '265 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States,or importing into the United States, the Accused Products with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing technology or aspects of the chips are not a staple article of commerce suitable for substantial non-infringing use.

89.    The infringing aspects of the Accused Products can be used only in a manner that infringes the '265 Patent and thus have no substantial non-infringing uses.  The infringing

ACTIVE/110152768.10

aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful

non-infringing use.

90.     On information and belief, Defendants were either aware of, or willfully blind to

the existence of the '265 Patent as early as November 17, 2020.  Defendants' infringement of the

'265 Patent has been and continues to be willful and deliberate, because Defendants have acted

in at least an objectively reckless manner in view of the high likelihood that its acts constituted

infringement of the '265 Patent, and with full knowledge of Xiros's rights in the '265 Patent.

91.     Defendants' acts of infringement have caused and continue to cause damage to

Xiros, and Xiros is entitled to recover from Defendants the damages it has sustained as a result of

those wrongful acts in an amount subject to proof at trial. Defendants' infringement of Xiros's

rights under the '265 Patent will continue to damage Xiros, causing irreparable harm for which

there is no adequate remedy at law, unless enjoined by this Court.

**COUNT FOUR**
**INFRINGEMENT OF U.S. PATENT NO. 10,835,266**

92.     Plaintiff repeats and incorporates by reference each preceding paragraph as  if

fully set forth herein and further states:

93.     Xiros is the owner by assignment of the '266 Patent and holds all substantial

rights in that patent, including the sole and exclusive right to sue and recover for any and all

infringement.

94.     Claim 1 of the '266 Patent recites:

1. A system comprising:

a metal saw guide that has a slot to receive and guide a saw;

a plastic body; and

a plurality of plastic locating members that extend from the plastic
body,

-22-

wherein at least one plastic locating member of the plurality of plastic locating members is patient-specific,

wherein each plastic locating member has a respective bone-engaging surface that conforms to a corresponding surface of a tibia,

wherein the metal saw guide is non-adjustably attached to the plastic body, and

wherein each plastic locating member conforms against the corresponding surface of the tibia to position the metal saw guide at a predetermined location relative to the tibia.

95.     Defendants have infringed the '266 Patent as detailed in Exhibit J.

96.     Defendants' TruMatch resection guides have tool guide blocks for guiding tools to work on a bone in the form of saw slot to cut the femur or tibia.



97.     Defendants' TruMatch resection guides consist of a plastic body with locating members with bone engaging surfaces adapted to conform to a surface of the tibia in order to correctly position the metal saw guide.  As shown in the figure above, each plastic locating member has a bore extending through it.  The metallic instrument guide slots and pin holes are non-adjustably attached by a snap-fit mechanism or over-molding.

98.     Defendants have directly infringed and continue to directly infringe one or more claims, including at least claim 1, of the '266 Patent in violation of 35 U.S.C. § 271(a) by,

ACTIVE/110152768.10

without authority, making, using, offering to sell, or selling in the United States or importing into the United States the Accused Products.

99.     In addition, Defendants have indirectly infringed and continue to indirectly infringe the '731 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by others, including OEMs, agent-subsidiaries, affiliates, partners, service providers, manufacturers, importers, resellers, customers, and/or end users, in this district and elsewhere in the United States, through the dissemination of the Accused Products and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products (including Exhibits E-F) with knowledge and the specific intent that its efforts will result in the direct infringement of the '266 Patent.

100.    For example, Defendants took active steps to encourage end users to use the  Accused Products in the United States in a manner it knows will directly infringe each element of one or more claims, including at least claim 1 of the '266 Patent, including by selling the Accused Products and promoting and instructing on their use despite knowing of the patent and the fact that such acts will cause the user to use the chip in a manner that infringes the patent. Defendants continue to undertake the above-identified active steps and has neither modified the Accused Products nor provided instructions to end users to avoid infringing since receiving notice of the '266 Patent and how those steps induce infringement of that patent.

101.    In addition, Defendants have indirectly infringed and continue to indirectly infringe the '266 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Accused Products with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and

-24-

despite the fact that the infringing technology or aspects of the chips are not a staple article of commerce suitable for substantial non-infringing use.

102.    The infringing aspects of the Accused Products can be used only in a manner that infringes the '266 Patent and thus have no substantial non-infringing uses.   The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

103.    On information and belief, Defendants were either aware of, or willfully blind to the existence of the '266 Patent as early as November 17, 2020.  Defendants' infringement of the '266 Patent has been and continues to be willful and deliberate, because Defendants have acted in at least an objectively reckless manner in view of the high likelihood that its acts constituted infringement of the '266 Patent, and with full knowledge of Xiros's rights in the '266 Patent.

104.    Defendants' acts of infringement have caused and continue to cause damage to Xiros, and Xiros is entitled to recover from Defendants the damages it has sustained as a result of those wrongful acts in an amount subject to proof at trial. Defendants' infringement of Xiros's rights under the '266 Patent will continue to damage Xiros, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## JURY DEMAND

105.    Xiros hereby demands trial by jury pursuant to Federal Rule of Civil Procedure 38.

## FEES AND COSTS

106.    To the extent that Defendants' litigation conduct supports a finding that this is an "exceptional case," an award of attorneys' fees and costs to Xiros is justified pursuant to 35 U.S.C. § 285.

ACTIVE/110152768.10

## PRAYER FOR RELIEF

WHEREFORE, Xiros requests entry of judgment in its favor and against Defendants as follows:

a.  Entry of judgment holding Defendants liable for infringement of the Asserted Patents;

b.  An order enjoining each Defendant, its officers, agents, servants, employees, attorneys and affiliated companies, its assigns and successors in interest, and those persons in active concert or participation with it, from continued acts of infringement of the Asserted Patents;

c.  An order awarding Xiros pursuant to 35 U.S.C. § 284 resulting from Defendants' past, current, and future infringement of the Asserted Patents, together with prejudgment and post-judgment interest;

d.  A finding that Defendants' willfully infringed the patents-in-suit;

e.  A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Xiros's reasonable attorneys' fees;

f.  Any and all other legal or equitable relief as may be available under law and which the Court may deem proper.

ACTIVE/110152768.10

Dated:  June 28, 2021                    Respectfully Submitted,

By: */s/ Cabrach Connor*
    Cabrach J. Connor
    State Bar No. 24036390
    cab@connorkudlaclee.com
    John M. Shumaker
    State Bar No. 24033069
    john@connorkudlaclee.com
    **CONNOR KUDLAC LEE PLLC**
    609 Castle Ridge Road, Suite 450
    Austin, Texas 78746
    512.777.1254 Telephone
    888.387.1134 Facsimile

    Neel Chatterjee (pro hac vice pending)
    NChatterjee@goodwinlaw.com
    **GOODWIN PROCTER LLP**
    601 Marshall Street
    Redwood City, CA 94063
    650.752.3100 Telephone
    650.853.1038 Facsimile
    **ATTORNEYS FOR PLAINTIFF**

ACTIVE/110152768.10