IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| XIROS, LTD., | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | **6:21-CV-00681-ADA** |
| | § | |
| DEPUY SYNTHES SALES, INC., | § | |
| *Defendant.* | § | |

## ORDER GRANTING MOTION TO TRANSFER

Came on for consideration Defendant DePuy Synthes Sales, Inc.'s ("Defendant" or "DSS") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (the "Motion"). ECF No. 24. Plaintiff Xiros, Ltd. ("Plaintiff" or "Xiros") filed its Opposition (ECF No. 42), and then a Corrected Opposition (ECF No. 46). DSS filed its Reply. ECF No. 48. After careful consideration of the parties' briefs and applicable law, the Court **GRANTS** DSS's Motion.

## I.      BACKGROUND

Plaintiff Xiros filed its complaint on June 28, 2021, against DSS alleging infringement of four patents: U.S. Patent Nos. 9,125,674 ("the '674 patent"), 9,265,511 ("the '511 patent"), 10,835,265 ("the '265 patent"), and 10,835,266 ("the '266 patent") (collectively, the "Asserted Patents"). *See generally* ECF No. 1. Xiros later amended its complaint. ECF No. 18. In its amended complaint, Xiros alleges direct and indirect infringement of the Asserted Patents. *See id.* ¶¶ 66, 67, 69, 79, 80, 82, 92, 93, 95, 105, 106, and 108. Xiros suggests that DePuy Synthes, Inc. ("DePuy"), an affiliate of DSS, utilized confidential information gained during collaboration agreement negotiations to develop the TruMatch Personalized Solutions Resection Guides and TruMatch Solutions Pin Guides (the "Accused Products"). ECF No. 18 ¶¶ 4–5. The Accused

Products are custom tools that are sometimes used in knee replacement surgeries. ECF No. 24 at 1.

Xiros is a British company headquartered in Leeds, England, United Kingdom. ECF No. 18 ¶ 8. DSS is incorporated and headquartered in Raynham, Massachusetts. ECF No. 24 at 2. DSS rents a small office in San Antonio, Texas with sales of the Accused Products alleged to infringe the Asserted Patents. ECF No. 24 at 2. On September 24, 2021, DSS filed its motion to transfer to the District Court for the District of Massachusetts, Boston Division ("Boston Division"). *See* ECF No. 24. The briefing is now ripe for adjudication.

## II.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section § 1404(a) provides that, "[f]or the convenience of parties and witnesses . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Defendants should expect and accept some inconvenience when haled into Court. *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). "Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. In other words, the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *Id.*

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *Volkswagen II*, 545 F.3d at 314. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to demonstrate that the proposed transferee forum is clearly more convenient than the forum in

3

which the case was filed. *Id.* at 315. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple Inc.*, No. 2:19-CV-00118-JRG, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## III.    DISCUSSION

The threshold determination in the Section 1404(a) analysis is whether this case could initially have been brought in the destination venue—the District of Massachusetts. DSS asserts that this case could have been brought in Boston Division because "DSS is incorporated and has its principal place of business in Raynham, Massachusetts." ECF No. 24 at 6. Xiros does not dispute this contention. *See generally*, ECF No. 42. This Court finds that venue would have been proper in the District of Massachusetts had Xiros filed this case there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the District of Massachusetts ("DMA") is clearly more convenient than the Western District of Texas ("WDTX").

### A.  The Private Interest Factors

#### *1.  The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019) (citing *Volkswagen II*, 545 F.3d at 315). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."

4

*In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). However, this factor "requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective form." *Def. Distributed*, 30 F.4th at 434.

DSS maintains its headquarters in Raynham, Massachusetts. ECF No. 24 at 6. It argues that all known documents "pertaining to the Accused Products are either located in Raynham, Massachusetts or on servers accessible in Raynham, Massachusetts." ECF No. 24 at 6. DSS further asserts that "no relevant documents are believed to be stored in this district." ECF No. 24 at 7. Though DSS rents a small office in San Antonio, Texas, it states that no relevant documents are believed to be stored at the site. ECF No. 24 at 7.

Xiros urges that DSS relies solely on its headquarters being located in Raynham, Massachusetts to justify transfer. ECF No. 46 at 7. Xiros argues that DSS has not stated where the server-accessible documents are physically located and whether the San Antonio site can access the documents. *Id.* Xiros contends that sources of proof are spread across multiple states and continents. *Id.* at 5–6. It argues that evidence will be located at 3D Systems in Denver, Colorado, at DePuy Synthes Products's Warsaw, Indiana manufacturing facility, and the Johnson & Johnson Health Care Systems facility in Chicago, Illinois. *Id.* Xiros asserts that while Chicago, Illinois and Warsaw, Indiana are slightly closer to Boston, Denver is significantly closer to Waco. *Id.*

Xiros has no documents in either the WDTX or DMA. *Id.* at 6. Rather, all its documents are in Leeds, England. *Id.* Xiros suggests that pertinent evidence will also be in the possession of surgeons, the intended user of the Accused Products. *Id.* It offers four surgeons that would have evidence through the TruMatch portal and correspondence. *Id.* Drs. Beicker and Sides are

located in WDTX, while Dr. Burke is located in Houston and Pearland. *Id.* Additionally, Xiros states that Dr. Cohen, having conducted over 1500 TruMatch operations, is located in Lake Charles, Louisiana—much closer to the WDTX than to the DMA. *Id.* Xiros concludes that in light of some sources of proof being closer to the DMA, other sources of proof are closer to WDTX and transfer should not be favored. *Id.* at 7.

Upon review, the Court finds that relevant documents are located in the DMA, shifting this factor in favor of transfer. DSS's declaration responses indicate that physical documents are located in Massachusetts and none are kept at the San Antonio site. ECF No. 24-1 at 3–4 ("Development and manufacture of Accused Products does not occur at this property or in the Western District of Texas. Similarly, no product development or manufacturing documents are known to be located in the district. All documents pertaining to the Accused products are located in Raynham, Massachusetts or accessible from servers in the Raynham, Massachusetts facility."). Furthermore, the Court finds wanting Xiros's argument that documents may be accessed electronically at the San Antonio facility. Other documents are already in Massachusetts and those not in either forum will have to be transferred from outside the forum regardless. Finally, any documents housed by the surgeons in the WDTX are significantly outweighed by the plethora of documents in the DMA. The Court finds the documents in Raynham favor transfer to the DMA.

### 2.   *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under this factor, the Court focuses on "non-party witnesses whose attendance may need to be compelled by court order." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1316 (Fed. Cir. 2021); *see Volkswagen II*, 545 F.3d at 316 (holding that the second private interest factor weighed in favor of transfer because the transferee venue had subpoena power over non-party witnesses). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses

reside within the transferee venue than reside in the transferor venue." *In re Apple Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

Rule 45 of the Federal Rules of Civil Procedure provides three important parts for the purposes of Section 1404(a). "First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *4 (E.D. Tex. May 22, 2018) (citing FED. R. CIV. P. 45(c)(1)(A)). "Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in 'substantial expense.'" *Id.* (citing FED. R. CIV. P. 45(c)(1)(B)(i)–(ii)). "Third, a district court has nationwide subpoena power to compel a nonparty witness's attendance at a deposition within 100 miles of where the witness lives or works." *Id.* (citing FED. R. CIV. P. 45(a)(2), 45(c)(1)).

DSS argues that third-party witnesses are located in Massachusetts. ECF No. 24 at 7. DSS states that Conformis is located in the Boston Division, as are many of its current and former employees. *Id.* Moreover, DSS alleges that six of the named prior art witnesses are also located within the 100-mile radius of the Boston Division's courthouse. *Id.* Likewise, DSS suggests that the alleged negotiating parties, Donald Haut and Dr. Rosengard, live in Massachusetts. *Id.* DSS concludes that many potential witnesses are subject to compulsory process in the Boston Division, while no third-party witnesses are subject to the subpoena power of this Court. *Id.*

Xiros posits that DSS has improperly characterized the witnesses subject to compulsory process. ECF No. 46 at 8–10. Rather, Xiros identifies doctors utilizing the Accused Products as

the most relevant third-party witnesses. *Id.* at 8. Accordingly, Xiros argues that none of the doctors are subject to compulsory process in the Boston Division. *Id.* at 9. Xiros asserts that three of the doctors may be compelled to appear in this Court: Drs. Sides, Beicker, and Burke. *Id.* at 8. Moreover, Xiros contends that DSS has made no more than generalized statements regarding the relevance of Mr. Haut and Dr. Rosenberg as witnesses. *Id.* at 9. Xiros also suggests there has been no established relevance of Conformis and its employees as witnesses to the case. *Id.* Xiros also questions the relevance of the prior art witnesses DSS argues are subject to compulsory process. *Id.* at 9–10. Further, Xiros argues that Ms. Snyder (O'Regan) actually lives in California and is therefore not subject to compulsory process. *Id.* at 10. Xiros offers three other prior art inventors that are subject to compulsory process by this Court. *Id.* Xiros concludes that there are witnesses subject to compulsory process of both this Court and the Boston Division and this factor should be neutral. *Id.*

The Court finds that non-party witnesses are located in the district of both venues. Three non-party witnesses may be compelled by this Court: Drs. Sides, Beicker, and Burke. However, while the proposed doctors using the Accused Products reside in Texas, there has been no showing that they would have evidence not possessed by doctors using the Accused Products in Massachusetts. *Moskowitz Fam. LLC v. Globus Med., Inc.*, No. 6:19-CV-00672-ADA, 2020 WL 4577710, at *3 (W.D. Tex. July 2, 2020) ("[T]he Court … agrees that these doctors likely do not have any unique evidence regarding indirect infringement. Without unique evidence, the doctors in the WDTX would have more difficulty providing evidence than doctors located in Pennsylvania or Delaware who could provide the same evidence."). Conversely, Mr. Haut and Dr. Rosenberg, admittedly relevant by both parties, are located in Massachusetts. The Court does not find DSS's arguments about the location of prior art inventors convincing, nor does the Court

give weight to the purported prior art witnesses proposed by Xiros. Plaintiff "did not disclose any individuals or prior art references in its responses to venue interrogatories," ECF No. 48, so they will not now become relevant during transfer briefing. The Court also gives weight to Conformis witnesses, as they may have evidence regarding conception and corresponding system art. Therefore, the Court finds the factor still weighs in favor of transfer.

### 3.   *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). When analyzing this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693-JRG, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). The Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). In essence, the Federal Circuit has found that time away from an individual's home is a more important metric than distance. *Id.*

DSS asserts that many of the witnesses residing in Massachusetts make this factor strongly favor transfer. ECF No. 24 at 8–9. DSS argues that all of its corporate representatives and document custodians could easily drive to the DMA but would need to fly over six hours for

this Court. *Id.* at 9. Additionally, should they be considered as willing witnesses, DSS suggests Mr. Haut and Dr. Rosenberg would need to travel from Massachusetts to Waco. *Id.* Moreover, DSS believes that Boston is more convenient for witnesses not in either forum. *Id.* It suggests that travel from Indiana is more convenient to the Boston Division, having shorter flights and direct flight options not available to Waco. *Id.* Similarly, DSS asserts that travel from the United Kingdom would be nearly half the travel time to the DMA compared to Waco. *Id.* DSS concludes the DMA is clearly more convenient for potential witnesses. *Id.* at 10.

Xiros counters that cost and convenience is a neutral factor by nature of the geographic diversity of witnesses. ECF No. 46 at 10. Xiros argues that WDTX, a short drive to Waco, is much more convenient for Drs. Sides, Beicker and Burke. *Id.* at 11. Additionally, Xiros suggests that Dr. Cohen, a surgeon with more than 1500 knee replacements using the Accused Products, has only a five-hour drive to WDTX compared to a six-hour drive and flight required when traveling to the DMA. *Id.* Xiros notes that DSS ignored any witnesses that it may have at its San Antonio office, a shorter drive to Waco than flight to Boston. *Id.* Xiros also notes that international witnesses are given little weight in the analysis making the inventors located in the United Kingdom of little concern. *Id.* at 12. Thus, Xiros suggests that DSS has not met its burden of making more than general allegations of inconvenience for many witnesses. *Id.* at 12–13. It argues that DSS has made only vague references to corporate representatives and document custodians. *Id.* Furthermore, the negotiating parties that DSS relies on as important Massachusetts-based witnesses are all representatives of the parties and likely subject to compulsion by their respective employers. *Id.* Xiros concludes that the inconvenience of witnesses will result from either venue. *Id.*

The Court agrees with Plaintiff that many of the witnesses will be inconvenienced regardless of venue. Many of the potential witnesses live outside of either forum and will travel significant distances as a result. The only witnesses located in this District are Drs. Sides and Beicker, with Dr. Burke not far away. In contrast, party witnesses for DSS are also located in Massachusetts. However, the Court finds that the majority of witnesses outside of each of the forums (whether internationally, or in Indiana) reside closer to the DMA than the WDTX. Under the Fifth Circuit's 100-mile rule, these witnesses will be slightly more inconvenienced by traveling to the WDTX than to the DMA. Accordingly, the Court finds that this factor slightly favors transfer.

### 4. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

DSS asserts that no practical problems will result from transfer of the suit. ECF No. 24 at 10. It argues that the case is in the early stages. *Id.* DSS states that no delay would be imposed through a transfer to the DMA. *Id.* Conversely, Xiros feels that the parties have fully briefed this and two simultaneous motions to dismiss. ECF No. 46 at 13–14. Xiros concludes that the pending motions create problems. *Id.* at 14.

The Court is not persuaded by Plaintiff's argument. The present suit has not progressed out of its early stages. Transfer to the Boston Division of the DMA will not impose delay. The Court finds that this factor is neutral.

### B. The Public Interest Factors

#### 1. Administrative Difficulties Flowing from Court Congestion

This factor considers "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral,

then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

DSS argues that the early stage of the litigation makes this factor neutral. *See* ECF No. 24 at 11. DSS contends that no meaningful delay would be incurred through transfer and only speculations could be made regarding the expediency of reaching trial in either forum. *Id.* Conversely, Xiros believes that expediency strongly disfavors transfer. ECF No. 46 at 14. It argues that WDTX cases are concluded substantially faster than those in the Boston Division. *Id.* at 15. It presents evidence that the average time to termination of cases in WDTX is less than half that of Boston Division judges, save Judge Kelley. *Id.* at 16–17.

The Court finds that this case would likely reach trial faster in this forum, based on the statistics presented by Plaintiff. The Federal Circuit has stated this factor is speculative and granted limited weight. *In re Genentech*, 556 F.3d at 1347. Accordingly, the Court finds that this factor disfavors transfer, but does not accord it significant weight in the overall analysis.

### 2. *Local Interest in Having Localized Interests Decided at Home*

Courts must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in a patent case "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-4387-K, 2015 WL 13870507, at *4 (N. D. Tex. July 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed.

12

Cir. 2010)) (emphasis original). "Important considerations include the location of the injury, witnesses, and the Plaintiff's residence." *Def. Distributed v. Bruck*, 30 F.4th at 435.

DSS claims that there is no local interest in the suit remaining in WDTX. ECF No. 24 at 11. It argues that the small San Antonio office is the only connection any of the parties have to this District. *Id.* In contrast, DSS argues there is a much greater connection to the Boston Division through its Massachusetts headquarters. *Id.* Moreover, DSS notes that the parties involved in the pre-suit negotiations are located in Massachusetts. *Id.* DSS contends that Xiros has named doctors practicing in Texas as witnesses in bad faith. *Id.* It suggests the witnesses have no factual basis and serve only purposes of venue analysis. *Id.* DSS argues this factor favors transfer as a result. *Id.*

Xiros argues, in contrast, that a local interest disfavors transfer. ECF No. 46 at 14. It asserts that no doctors that use the Accused Products have been named as witnesses in the Boston Division. *Id.* Conversely, three doctors using the Accused reside in Texas within close travel distance of this Court. *Id.*

After analyzing the relevant facts, the Court believes that this District has little connection to the controversy. The sale and use of the Accused Products are not constrained to either the WDTX or DMA. Rather, the alleged infringement is nationwide. Defendant resides within the District of Massachusetts and Plaintiff is not located in either forum. The events giving rise to the suit are more closely related to DSS's facilities in Massachusetts. Accordingly, the Court finds that this factor favors transfer to the Boston Division.

### 3. *Familiarity of the Forum with the Law That will Govern the Case*

Both parties agree that this factor is neutral. ECF No. 24 at 12; ECF No. 46 at 15. The Court agrees.

**4. *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law***

Both parties agree that this factor is neutral. ECF No. 24 at 12; ECF No. 46 at 15. The Court agrees.

**C. Weighing of the Factors**

Having reviewed each of the public and private interest factors, the Court provides the following table to summarize the Court's findings.

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Favors transfer |
| Cost of attendance for willing witnesses | Slightly favors transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Disfavors transfer |
| Local interest | Favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

## IV.    CONCLUSION

After a review of all the private and public interest factors, the Court finds that DSS has met its burden to show that transfer is clearly more convenient. Defendant DSS's Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the District of Massachusetts, Boston Division (ECF No. 24) is hereby **GRANTED**.

SIGNED this 22nd day of August, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE